**Harlan E. HYDE, Plaintiff-Appellant,**

v.

**Otis R. BOWEN, Secretary of Health and Human Services, Defendant-Appellee.**

**No. 86–8503.**

United States Court of Appeals, Eleventh Circuit.

Aug. 3, 1987.

Robert A. Whitlow, Dalton, Ga., for plaintiff-appellant.

Stephen S. Cowen, U.S. Atty., J.D. Roy Atchison, Atlanta, Ga., for defendant-appellee.

Before VANCE and KRAVITCH, Circuit Judges, and BROWN*, Senior Circuit Judge.

KRAVITCH, Circuit Judge:

Harlan E. Hyde appeals the affirmance by the district court of the Secretary of Health and Human Services' (the "Secretary") denial of his application for disability and disability insurance benefits. We reverse and remand to permit the Secretary to consider new evidence.

* Honorable John R. Brown, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

## I.

Claimant Hyde filed an application for disability benefits in September, 1984 alleging that he had been disabled since he fell on January 4, 1982, and injured his back, left hip and left knee. Hyde's application for disability benefits was denied, as was a subsequent request for reconsideration. Hyde then requested and received a hearing before an Administrative Law Judge (ALJ); this hearing was held on March 14, 1985.

At the hearing Hyde testified that in 1976 his left hip had been replaced with a prosthesis; Hyde said that he tore this prosthesis loose when he fell in January, 1982. Hyde stated that after the fall he experienced continuous problems with his left hip, including partial paralysis and serious pain. In April, 1984, Hyde underwent a second hip replacement operation on his left hip. According to Hyde, this operation alleviated the problems he had been having with paralysis; subsequent to the operation, however, his problems with pain increased. Hyde testified that since the second operation he must sit in a recliner in order to stay out of pain and fairly comfortable. Hyde also claimed to be experiencing problems with his lower back and left knee. Hyde's allegations of pain were confirmed by his wife, who testified at the hearing.

The medical evidence before the ALJ confirmed that Hyde has twice had his left hip replaced. Reports submitted by Dr. Heywood, Hyde's treating physician, chronical the problems Hyde has had with his hip and indicate that Hyde has complained of pain in his hip since the January, 1982 fall. In the Physical Capacities Evaluations they submitted, both Dr. Robert Simmons and Dr. H. Barrett Heywood stated that should Hyde complain of pain, his complaints would be consistent with the objective medical evidence.[1] In his office notes taken after Hyde's second hip replacement

1. Specifically, both doctors checked "yes" in response to the following question on the physical capacities evaluation form: "If the claimant suf-

operation Dr. Heywood stated that it is not apparent why Hyde still has significant discomfort; in later notes he stated that he is not sure "what is happening in this patient."

The ALJ denied Hyde's claim for disability benefits. The ALJ found that Hyde has a severe impairment relating to his left hip and that he is precluded from performing his past relevant work as a route salesman or supervisor for a vending company. This conclusion shifted the burden to the Secretary to prove that Hyde can perform "substantial gainful work activity which exists in the national economy." *Patterson v. Bowen,* 799 F.2d 1455, 1458 (11th Cir.1986). The ALJ found, however, that the Secretary had met his burden and went on to find that Hyde is not disabled.

The ALJ's finding that the Secretary had met his burden was based on the ALJ's application of the medical-vocational guidelines contained in the Social Security Administration's regulations, 20 C.F.R. pt. 404, subpt. P, app. 2 (1986) [hereinafter, the grids]; *see* 20 C.F.R. §§ 404.1520(f), 404.-1561. The ALJ concluded that application of the grids to this case directed a conclusion of "not disabled."

The ALJ's decision that the Secretary may rely conclusively on the grids was based on his findings that Hyde can perform a full range of sedentary work and that Hyde's subjective complaints of debilitating pain are not credible.[2] The ALJ grounded his decision to reject Hyde's allegations of pain primarily on his observations of Hyde's demeanor at trial. He also concluded that Hyde's complaints of debilitating pain are not supported by the objective medical evidence, observing that Dr. Heywood stated in his office notes that he does not understand why subsequent to the second hip replacement Hyde continued to complain of pain.

The Appeals Counsel of the Department of Health and Human Services denied re-

view of the ALJ's decision; accordingly, the ALJ's decision became a final order of the Secretary. Hyde appealed to the federal district court. Prior to the assignment of the case to a magistrate, Hyde filed a motion for submission of new evidence generated after the hearing decision and appeal. This evidence consisted of: office notes of Dr. Heywood from November 28, 1984 through August 23, 1985, a Radionuclide Bone Scan, dated August 8, 1985, and office notes of Dr. Simmons, dated September 10, 1985. The district court denied the motion on the ground that plaintiff had not shown that remand to the Secretary was appropriate based on this evidence. Subsequently, the magistrate issued a report and recommendation recommending affirmance of the Secretary's decision denying benefits. Hyde filed objections. He then filed his second motion for submission of additional evidence. This new evidence consisted of an April 1986 letter from Dr. Heywood stating his conclusion, based on his reevaluation of Hyde, that Hyde's allegations of significant pain in his hip and leg are consistent with the objective medical evidence—specifically, with the evidence that Hyde's prosthetic device may be loose. The district court affirmed the Secretary's decision to deny disability benefits without taking any action on this second motion to submit additional evidence.

Hyde appealed raising several claims of error below, including a claim that his problems with severe pain, which Hyde asserts was improperly rejected as not credible by the ALJ, renders invalid the ALJ's use of the grids. In addition, he requested that we remand this case to the Secretary for consideration of his new evidence. We conclude that remand for consideration of new evidence is appropriate; accordingly we do not address Hyde's other claims.[3]

## II.

The judicial determination of whether new evidence renders appropriate a remand

---

fers occasional severe pain, is this pain consistent with clinical findings?".

**2.** The ALJ in applying the grids decided to treat Hyde as a "younger individual" age 45–49, based on Hyde's chronological age of 47, as opposed to evaluating Hyde's residual functional capaci-

ty based on Hyde's alleged physiological age of 50–60. Hyde contests this conclusion. *See* Note 3, *infra.*

**3.** Hyde on appeal raised the following claims: (1) that the Secretary did not meet his affirmative burden of producing competent evidence

to the Secretary is a *de novo* proceeding. *Smith v. Bowen*, 792 F.2d 1547, 1550 (11th Cir.1986); *Caulder v. Bowen*, 791 F.2d 872, 875 (11th Cir.1986); *Cherry v. Heckler*, 760 F.2d 1186, 1194 (11th Cir.1985). In order to prevail on a claim that remand is appropriate, a claimant must establish that: "(1) there is new, noncumulative evidence; (2) the evidence is 'material,' that is, relevant and probative so that there is a reasonable possibility that it would change the administrative result, and (3) there is good cause for failure to submit the evidence at the administrative level." *Milano v. Bowen*, 809 F.2d 763, 766 (11th Cir.1987); *Smith*, 792 F.2d at 1550; *Caulder*, 791 F.2d at 877.

We conclude that the new evidence presented by Hyde—specifically the office notes of Dr. Heywood from November 28, 1984 through August 23, 1985, the Radionuclide Bone Scan, the office notes of Dr. Simmons, dated September 10, 1985 and the 1986 letter of Dr. Heywood—satisfies this test. The Secretary does not seriously attempt to argue otherwise.[4]

There is no doubt that the evidence is new and noncumulative. It is "new" in that it was not previously before the ALJ. It is "noncumulative" as it provides objective medical evidence in support of Hyde's allegations of severe pain—objective medical evidence which the ALJ previously had found to be wanting. *See Caulder*, 791 F.2d at 877 (remand based on new test results).

Moreover, because this new evidence did not exist at the time of the administrative proceedings Hyde has established good cause for failure to submit the evidence at the administrative level. *Smith*, 792 F.2d at 1550; *Caulder*, 791 F.2d at 878; *Cherry*, 760 F.2d at 1192.

Finally, we conclude that Hyde has established that the evidence is "material" in that there is a reasonable possibility that the new evidence would change the administrative outcome. The new evidence provides objective medical support for Hyde's subjective complaints of pain and, if accepted, may warrant acceptance by the ALJ of these allegations of pain. *See McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir.1987) (stating the test applicable to subjective allegations of pain); *Landry v. Heckler*, 782 F.2d 1551, 1553–54 (11th Cir.1986). Moreover, the new evidence supports Hyde's claim that because of the pain his ability to adapt to a new work environment is less than the level established under the grids; this evidence, if accepted, therefore may preclude the Secretary from relying, as he did previously, on the grids to sustain his burden of establishing that Hyde can perform "substantial gainful activity which exists in the national economy." *See Patterson*, 799 F.2d at 1458–59; *Reeves v. Heckler*, 734 F.2d 519, 525–26 (11th Cir. 1984) (per curiam). Furthermore, the new evidence—in particular Dr. Heywood's 1986

---

that Hyde could engage in substantial gainful activity through employment opportunities which exist in significant numbers in the national economy; (2) that the ALJ's decision to reject Hyde's testimony as not credible was not supported by substantial evidence and articulated reasoning; (3) that the ALJ's decision is not based on substantial medical and vocational evidence as Hyde could not engage in an unlimited range of work activity, and therefore use of a vocational expert was required; (4) the ALJ failed to give substantial weight to the diagnostic and limiting functional restrictions placed by treating physicians and improperly rejected the treating physicians' opinions as to the presence of occasional severe pain; (5) the ALJ incorrectly employed the grid because Hyde's problems with severe pain renders these guidelines inapplicable; and (6) the ALJ in using the grids should have used the grid classification coincident with Hyde's physiological age, not with his chronological age (*see* Note 2, *supra*).

**4.** The Secretary did not address the remand issue in his brief, beyond stating the three-prong test of *Cherry v. Heckler*, 760 F.2d 1186, 1193 (11th Cir.1985) and asserting in a footnote that Hyde has not met this test. At oral argument, the Secretary's only argument against remand was that the new evidence would not change the ALJ's conclusion that Hyde was not disabled between January, 1982 and the date the hearing was conducted. The new tests, the Secretary argued, merely indicate that Hyde may have a legitimate claim to be disabled as of the date of the tests. This argument is without merit. The new medical evidence, for example Dr. Heywood's 1986 letter, provides an objective medical explanation for Hyde's previously inexplicable complaints of pain. This evidence, if accepted, indicates not only that Hyde currently has an objective basis for his complaints of pain, but, also that Hyde had such a basis prior to the date of the ALJ's order.

letter [5]—gives rise to a reasonable possibility that, absent the ability to rely conclusively on the grids, the Secretary would be unable to demonstrate that Hyde is not disabled.[6] Accordingly, we conclude that the new evidence is "material" as there is a reasonable possibility that the new evidence would change the administrative result. *See Caulder,* 791 F.2d at 877–78.

Because Hyde has satisfied his burden under the three-prong test of *Cherry, supra,* and progeny, we conclude that he is entitled to a remand for the consideration by the Secretary of the new evidence. Accordingly, we REVERSE the opinion of the district court and REMAND this case to the district court with instructions to remand to the Secretary for further proceedings consistent with this opinion.

---

5. Dr. Heywood in his 1986 letter stated that Hyde's pain prevents him from doing work in which he stands, walks or sits and concluded that Hyde is impaired from engaging in any substantial gainful activity, presumably including sedentary activity, on a regular basis.

6. Our holding that remand is appropriate does not depend on Dr. Heywood's conclusion in his 1986 letter that Hyde cannot engage in substantial gainful activity, however. Remand would be warranted even absent this finding since the new evidence indicates that complete reliance on the grids is inappropriate and, based on the remaining medical evidence in the record, we conclude that there is a reasonable possibility that the Secretary cannot otherwise satisfy his burden of proof. *See Patterson v. Bowen,* 799 F.2d 1455, 1458–59 (11th Cir.1986) (remanding where evidence before the ALJ indicated that complete reliance on the grids was inappropriate).